# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# TERRE HAUTE DIVISION

| | |
|---|---|
| GLENN D. ODOM, II, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 2:12-cv-00251-JMS-MJD |
| | ) |
| DR. TALENS doctor, NURSE FLENER Nurse, KIM GRAY, | ) ) ) |
| | ) |
| Defendants. | ) |

**Entry Discussing Defendants' Motion for Summary Judgment**

Plaintiff Glenn Odom, a Kentucky state prisoner, filed this civil action alleging that the medical care he received while an inmate at the Wabash Valley Correctional Facility ("Wabash Valley"), an Indiana prison, was constitutionally inadequate. Defendants Alfred Talens, M.D., Sue Flener, L.P.N. and Kim Gray, R.N. seek resolution of this action through summary judgment. For the reasons explained below, the motion for summary judgment [dkt. 151] is **granted in part and denied in part.**

Following the recommendations of recent Seventh Circuit opinions, this Court recruited experienced and competent counsel to represent Odom pro bono in this civil rights action pursuant to Local Rule 4-6. *See* dkt. 84 and 85. After recruited counsel expended considerable effort on Odom's behalf, Odom determined that he would be better off proceeding pro se. An ex parte telephonic hearing was held on Odom's recruited counsel's motion to withdraw. Odom was specifically advised that the Court would not be appointing another counsel to represent him in this matter and he indicated that he understood. See dkt. 123. This is not a case where the prisoner

plaintiff did not have access to legal counsel. Odom had court-recruited counsel but was unwilling to follow his lead. Counsel's appearance was withdrawn on December 20, 2013. *See* dkt. 125.

**Standard of Review**

A motion for summary judgment asks that the Court find that a trial based on the uncontroverted and admissible evidence is unnecessary because, as a matter of law, it would conclude in the moving party's favor. *See* Fed. R. Civ. Pro. 56. To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. Pro. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. Pro. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. Pro. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially the grant of summary judgment. Fed. R. Civ. Pro. 56(e).

The Court need only consider the cited materials, Fed. R. Civ. Pro. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson v. Cambridge Indus.,* 325 F.3d 892, 898 (7th Cir. 2003); *see also* Local Rule 56-1(h)(no duty to search record). Furthermore, reliance on the pleadings or

conclusory statements backed by inadmissible evidence is insufficient to create an issue of material fact on summary judgment. *Id.* at 901.

The key inquiry, then, is whether admissible evidence exists to support a plaintiff's claims, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact. *See Schacht v. Wis. Dep't of Corrections,* 175 F.3d 497, 504 (7th Cir.1999). When evaluating this inquiry, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial ... against the moving party." *Celotex,* 477 U.S. at 330.

## **Material Facts**

Odom responded to the pending motion. That response included a statement of material facts in dispute. The statement however, does not set forth any facts supported by citations to admissible evidence as required by Local Rule 56-1. See dkt. 158. Local Rule 56-1(b) requires a brief in opposition to a motion for summary judgment to include a section labeled "Statement of Material Facts in Dispute" which responds to the movant's asserted material facts by identifying the potentially determinative facts and factual disputes which the nonmoving party contends demonstrate that there is a dispute of fact precluding summary judgment. These facts must be supported by appropriate citations to admissible evidence. *See* 56-1(e). Although pro se filings are construed liberally, pro se litigants are not exempt from procedural rules. *Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008); s*ee also Greer v. Bd. of Educ., of the City of Chicago,* 267 F.3d 723, 727 (7th Cir. 2001); *Members v. Paige,* 140 F.3d 699, 702 (7th Cir. 1998) (stating that procedural rules "apply to uncounseled litigants and must be enforced"). Further, the Seventh Circuit has "consistently and repeatedly upheld" district courts' discretion to require compliance with the local rules governing summary judgment. *Bordelon v. Chicago Sch. Reform Bd. of*

*Trustees*, 233 F.3d 524, 527 (7th Cir. 2000); *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994)(collecting numerous cases). Although the statement of material facts in dispute was not considered, the Court did consider the plaintiff's declaration to the extent it contained admissible evidence. *See* dkt. 159 (declaration).

Odom's failure to properly oppose the motion for summary judgment with a statement of material facts in dispute supported by admissible evidence has a particular consequence, which is that he has admitted the truth of the defendant's statement of material facts for purposes of the court acting on the motion for summary judgment. See *Johnson v. Gudmundsson,* 35 F.3d 1104, 1108 (7th Cir. 1994). This is the result of Local Rule 56-1(f), of which Odom was notified. This does not alter the standard for assessing a Rule 56 motion, but does "reduc[e] the pool" from which the facts and inferences relative to such a motion may be drawn. *Smith v. Severn,* 129 F.3d 419, 426 (7th Cir. 1997). The undisputed material facts are as follows:

On February 12, 2011, Odom was beaten by three inmates with locks. Following the altercation, Alfred Talens, M.D. ("Dr. Talens") ordered Odom to be sent to the Sullivan County Community Hospital emergency department. The emergency room physician diagnosed injuries of a swollen right hand, a knot on the side of his head, backache, and an abrasion to his scalp. The emergency room physician read the x-ray as negative for a fracture (although it was later determined that Odom had an undisplaced fracture of the neck of the second metacarpal). The medical record does not reflect that Odom complained of his nose hurting or an injury to his nasal area. Odom's scalp abrasion was cleansed, did not require any stitches, and he was returned to Wabash Valley.

Upon his return, Nurse Sexton placed "buddy tape" on Odom's index and middle fingers and gave him Tylenol. Buddy taping a finger is a method of limiting movement by taping an

4

injured finger to the adjacent finger. It slightly limits mobility while serving as a reminder to the patient to be cautious with his injury. This method is particularly appropriate for small, non-displaced fractures such as Odom's because the bone does not need to be held in a particular position. Additionally, this method still allows some movement of the injured finger, which can assist with maintaining range of motion in the joints of that finger.

On February 14, 2011, Sullivan County Community Hospital records were received at the Department of Correction. The radiology report from Sullivan County Community Hospital indicated that "[t]here is an undisplaced fracture of the neck of the second metacarpal without displacement…The rest of the bones are unremarkable." Dr. Talens reviewed the Sullivan County Community Hospital records, saw Odom for an unscheduled visit and ordered follow-up x-rays to be taken on March 22, 2011. Dr. Talens removed the buddy tape from Odom's finger stating, "its just a broke[n] bone. It won't kill you." *See* dkt. 160 at p 2. He refused to take x-rays of Odom's nose stating "there's nothing we can do for a broken nose." Dr. Talens then prescribed Odom Naprosyn (aka naproxen[1]) for ten days. Naprosyn is an anti-inflammatory and pain reliever.[2]

On February 15, 2011, Odom complained of an injury to his nose and requested to be seen. He was triaged by a nurse on February 16, 2011, who noted that he had moderate swelling and no sign of deviation and referred him for a physician appointment.

On February 24, 2011, Jacques LeClerc, M.D. saw Odom for pain and swelling in his nose.

---

[1] Naprosyn is a brand name and naproxen is the generic name of the same drug. See http://www.drugs.com/naprosyn.html (visited November 14, 2014).
[2] In an apparent attempt to minimize its efficacy as a pain reliever, Odom states in his declaration that Naproxen is commonly used for menstrual cramps. Dkt. 159 at 3. In his response brief he argues "Naproxin is used to treat menstrual cramps and other microscopic aches." Dkt. 160 at p. 6. This testimony is improper lay opinion and his argument in this regard is frivolous. As a male, Odom has never experienced menstrual cramps and is in no position to argue the severity of the pain they cause.

5

He noted that there was mild swelling, but no deviated septum and ordered an x-ray, which confirmed that there was a fracture "with no significant displacement or deformity." On March 7, 2011, Dr. LeClerc saw Odom for a follow-up regarding his injured finger. Dr. LeClerc applied a tongue-blade splint and ordered Vicodin for three days. A tongue-blade splint is comprised of a wooden tongue blade applied to an injured finger with tape to immobilize the finger and remind the patient to be cautious when using the finger.

Odom alleges that Nurse Flener twisted his fractured finger on March 15, 2011. *See* dkt. 160. Odom's declaration states the he went to the medical/nurse room requesting a splint. Nurse Flener then told Odom that his hand is not broke; she said: "You['re] lying! If your hand was broken it would be in a cast." Dkt. 159 at p. 4. She then grabbed Odom's hand/finger while he was seated with handcuffs behind his back and twisted it towards her stating "show me why I should place you on the doctor's list!"[3] Odom was sent back to his cell. Later, Nurse Flener reviewed Odom's medical records saw that Odom had a fractured finger and an order for a splint for six weeks. Based on this information, Nurse Flener attended to Odom at his cell to ensure his splint was replaced. She applied the tongue-blade splint as carefully as she could in spite of Odom's obtrusive shackles. She had no intention of inflicting pain upon Odom and any pain he experienced during replacement of the splint was likely due to his underlying injury. Any movement of Odom's finger was reasonable and necessary in order to appropriately apply his splint.

On March 28, 2011, Dr. LeClerc saw Odom for a follow-up regarding his finger. He noted that the finger is straight without deformity, applied a new splint, and prescribed three more days of Vicodin. On April 7, 2011, an x-ray was taken of Odom's injured finger and his Naprosyn was

---

[3] Odom offers one witness statement in support of this claim. Antwoin Thompson testified in his declaration that Nurse Flener admitted she twisted Odom's hand but stated she didn't believe it was fractured. Dkt. 160-3 at p. 34.

6

renewed for another month. The x-ray report noted that that Odom's fractured finger was "completely healed" and "in good position and alignment and remains unchanged." On April 26, 2011, Lesa Wolfe, LPN saw Odom and educated him regarding range of motion exercises for his complaints of stiffness and pain in his injured finger. On May 2, 2011, Odom was transferred to a state prison in Kentucky and did not return to Indiana. Odom states that his hand/finger is deformed and his nose is crooked.[4]

On January 9, 2014, Odom's expert, Dr. Morgan, prepared his report regarding the care provided to Odom for his fractured finger. Dr. Morgan acknowledges that "[a]s far as treatment options for this fracture, really there is a spectrum of options and I will cover two of these." When asked about "whether splinting is completely necessary, [he] will say no." He goes on to opine:

> [W]hether I believe the treatment received for his metacarpal fracture showed a wanton or unnecessary infliction of pain, I do not believe so….This form of a metacarpal fracture is commonly treated with nonsteroidal anti-inflammatory drugs, Tylenol, and ice. Commonly, even with this fracture, people will even not seek medical care…Since this patient did receive appropriate treatment for a nondisplaced metacarpal fracture and received appropriate medication of nonsteroidal anti-inflammatories, I do not believe that the patient received a deliberate or cruel intentional treatment in regard to his pain or his fracture.

*See* Report of Dr. Derek Morgan, Dkt. 154-9 at p. 1.[5]

## Discussion

Each defendant argues that he or she is entitled to summary judgment in their favor because Odom's injuries did not constitute a serious medical need and because there is no evidence that he

---

[4] There is no evidence to support a conclusion that the alleged deformity is a result of the actions of the defendants. Odom's expert witness, Dr. Morgan, opined that Odom's finger was within acceptable alignment. The fact that Odom's injuries did not heal as he hoped does not necessarily mean that the defendant's acted with deliberate indifference in providing medical care.

[5] Odom argues that his expert states that his fracture needed a brace of some sort. This is simply not true. The Court reviewed the report in its entirety and the expert's opinion does nothing to advance Odom's claims. *See* dkt. 160-2 at p. 26.

or she was deliberately indifferent to Odom's medical needs. Odom disputes the defendants' conclusions.

## A. Eighth Amendment Claim

The Eighth Amendment prohibits cruel and unusual punishment; that guarantee encompasses a prisoner's right to medical care. Deliberate indifference to the serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). But negligence, even gross negligence, does not violate the Constitution. *Id.* at 105–06; *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009). Only deliberate indifference or worse in the face of a serious medical need will do. *Estelle*, 429 U.S. at 103–04; *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008).

A claim based on deficient medical care must demonstrate two requirements: 1) an objectively serious medical condition, and 2) an official's deliberate indifference to that condition. This is because deliberate indifference exists only when an official "knows of and disregards an excessive risk to an inmate's health; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (construing *Estelle*).

## B. Serious Medical Need

For the objective element, the prisoner's medical condition must be one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). While a "serious medical need" encompasses medical conditions less critical than life threatening, not "every ache and pain or medically recognized condition involving some discomfort can support an Eighth Amendment claim." *Id.* at 1370-72.

The defendants assert that they are entitled to summary judgment because Odom's fractured finger and nose were not sufficient serious injuries to meet the objective element of the deliberate indifference standard. They contend his injury was not sufficiently serious.

Taking the facts in the light most favorable to Odom as the non-moving party, however, Odom's injuries were sufficiently serious. This determination is supported by the fact that Odom was sent to the emergency room by Dr. Talens for treatment and that he was later diagnosed with a fractured hand and nose.

## C. Deliberate Indifference

Next, the defendants argue that even if Odom's fractured nose and finger constitute a serious medical need, they were not deliberately indifferent to his condition. To satisfy the subjective component, a prisoner must demonstrate that the defendant officials had a sufficiently culpable state of mind—that their "acts or omissions [were] sufficiently harmful to evidence deliberate indifference" to his serious medical needs. *Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014). In particular:

> The officials must know of and disregard an excessive risk to inmate health; indeed they must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and "must also draw the inference." *Farmer,* 511 U.S. at 837, 114 S.Ct. 1970. This is not to say that a prisoner must establish that officials intended or desired the harm that transpired. *Walker* [*v. Benjamin*], 293 F.3d [1030] at 1037 [(7th Cir. 2002) ]. Instead, it is enough to show that the defendants knew of a substantial risk of harm to the inmate and disregarded the risk.

*Townsend v. Cooper,* 759 F.3d 678, 689 (7th Cir. 2014) (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)).

### 1. Dr. Talens

Odom alleges that Dr. Talens was deliberately indifferent to his serious medical needs by not ordering an x-ray of Odom's nose, not splinting Odom's finger and not providing adequate

9

medication. But in light of the totality of care Dr. Talens provided, a reasonable fact-finder could not construe his actions as deliberate indifference. On February 12, 2014, upon learning that Odom was injured, Dr. Talens provided a telephone order for the nursing staff to send Odom to Sullivan County Community Hospital for emergency care. Odom was evaluated at the hospital and returned to the prison. Upon his return, Dr. Talens reviewed the emergency department records from Sullivan County Community Hospital which did not mention a nasal injury and stated that Odom's finger was not fractured. Dr. Talens then prescribed Odom Naprosyn, an anti-inflammatory and pain reliever, for ten days.

On February 14, 2011, the hospital radiology records arrived at the prison. Dr. Talens reviewed the records which indicated that "[t]here is an undisplaced fracture of the neck of the second metacarpal without displacement . . . The rest of the bones are unremarkable." That same day, Dr. Talens examined Odom at an unscheduled provider visit. Dr. Talens ordered that Odom's finger remain buddy-taped until his follow-up x-ray, which he scheduled for March 22, 2011.

Odom's suggestion that Dr. Talens is liable to him because Dr. Talens failed to have an x-ray taken of Odom's nose is rejected. There is no evidence that an x-ray was needed to determine whether Odom's nose was fractured and if he had a deviated septum. In fact the x-ray ordered by Dr. LeClerc and taken on February 24, 2011, confirmed that Odom's septum was not deviated and no treatment was necessary. In other words, Dr. LeClerc later confirmed what Dr. Talens previously told Odom: "there's nothing we can do for a broken nose." Dkt. 159 at p. 2. Under these circumstances, the failure to order an x-ray does not reflect deliberate indifference but the reality that a fractured nose such as Odom's must simply heal on its own. Because no treatment was necessary for Odom's nose, there was no adverse effect, and alleged delay cannot amount to deliberate indifference. *See Estelle v. Gamble*, 429 U.S. 97, 107 (U.S. 1976) (stating that "the

question whether an X-ray - or additional diagnostic techniques or forms of treatment - is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.").

Similarly, Dr. Talens cannot be held liable for his failure to splint Odom's finger. First, there is no evidence that a split was necessary. Odom's own expert states that the fractured hand would heal on its own and did not require a splint. Dkt. 154-9 at p. 2. In addition, Odom's expert opined that splinting the hand could result in negative side effects such as decreased mobility. Second, Dr. Talens did order that Odom's finger remain buddy-taped until his follow-up x-ray on March 22, 2011. There is nothing wrong with his decision to delegate this task to other medical care providers. To the contrary, Odom's expert opined that buddy taping of the fingers would be an appropriate protocol for Odom's fracture. *Id.*

Finally, Odom's suggestion that Dr. Talens' provided inappropriate medication is rejected. Odom argues Dr. Talens should have prescribed him with Flexiril instead of Naprosyn. In support Odom notes that Flexiril was recommended by the emergency room doctor. But, Dr. Talens, "as the inmate's acting primary care doctor, is free to make his own, independent medical determination as to the necessity of certain treatments or medications, so long as the determination is based on the physician's professional judgment and does not go against accepted professional standards." *Holloway v. Delaware County Sheriff*, 700 F.3d 1063, 1074 (7th Cir. 2012). Dr. Talens prescribed Naprosyn as a pain reliever and anti-inflammatory. There is no evidence that such action was taken in the absence of Dr. Talens' professional judgment. Odom's own expert states that given Odom's injuries he believes naproxen would have been a better pain medication than Flexeril. Dkt. 154-9 at p. 3. Odom's expert, Dr. Morgan states that "Flexeril is a muscle relaxant where naproxen is a nonsteroidal anti-inflammatory drug. It really would depend on the pain

11

source where one would be more effective than the other. Flexeril is thought to be better pain control medication for muscular type pains and since there really was no muscular involvement in the hand significantly in that area expect for maybe the intrinsic muscles, I feel naproxen would have been better pain medication. Also Flexeril would cause some drowsiness which might not be the best for the patient in [prison]." *Id*.

Dr. Talens' provided pro-active appropriate medical care for Odom's injuries which directly contradicts the allegation that he ignored a risk of harm to Odom. Under these circumstances no reasonable jury could find that Dr. Talens was deliberately indifferent to Odom's serious medical needs. Dr. Talens is entitled to summary judgment on this basis.

### 2. Susan Flener

Odom alleges that Nurse Flener twisted his fractured finger in anger on March 15, 2011. *See* dkt. 160. Odom's declaration states the he went to the medical/nurse room requesting a splint. Nurse Flener then told Odom that his hand is not broke; she said: "You['re] lying! If your hand was broken it would be in a cast." Dkt. 159 at p. 4. She then grabbed Odom's hand/finger while he was seated with handcuffs behind his back and twisted it towards her stating "show me why I should place you on the doctor's list!" Odom was sent back to his cell without treatment.

Considering the evidence in the light most favorable to Odom and giving him the benefit of all reasonable inferences from the evidence submitted, a reasonable jury could conclude that Nurse Flener was deliberately indifferent to Odom's fractured finger by grabbing and twisting it. This is particularly true in light of the fact that she could have reviewed Odom's medical record to determine whether he had been diagnosed with a break or fracture which required treatment.

Similarly, a reasonable jury could conclude that Nurse Flener used excessive force when twisting Flener fractured finger. To determine whether a viable excessive force claim is presented,

the "core judicial inquiry" is whether "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy,* 130 S. Ct. 1175, 1178 (2010) (citing *Hudson,* 503 U.S. at 7) (internal quotation marks omitted). "[W]hile a plaintiff need not demonstrate a significant injury to state a claim for excessive force under the Eighth Amendment, 'a claim ordinarily cannot be predicated on a de minimis use of physical force.'" *Outlaw v. Newkirk*, 259 F.3d 833, 837-838 (7th Cir. 2001) (quoting *DeWalt v. Carter*, 224 F.3d 607, 620 (7th Cir. 2000)); *O'Malley v. Litscher*, 465 F.3d 799, 805 (7th Cir. 2006). If Odom's finger had not been fractured the simply act of twisting a finger would represent the de minimis use of force. A reasonable jury, however, could conclude that twisting a fractured and visibly swollen finger goes beyond the de minimus use of force because a reasonable person would conclude that the action of twisting a fractured finger (unlike a healthy finger) would result in significant pain.

In conclusion, admissible evidence exists to support Odom's Eighth Amendment claims of deliberate indifference and excessive force against Nurse Flener. The Court recognizes that Nurse Flener attests to a much different version of events and intent. But the weight and credibility of the conflicting evidence is not appropriate for resolution on summary judgment. These assessments are reserved to the trier of fact. *See Schacht v. Wis. Dep't of Corrections,* 175 F.3d 497, 504 (7th Cir.1999).

3. **Nurse Gray**

Odom alleges that Nurse Gray was deliberately indifferent by failing to respond to his letters. He states that she put him on a "pay no mind" list because he continued to request medical treatment for his hand. In support Odom references Nurse Gray's answers to plaintiff's interrogatories. But the referenced document does not reflect that Nurse Gray was deliberately

indifferent to Odom's medical needs. Nor is there any indication that a "pay no mind" list ever existed. There is simply no evidence that Nurse Gray had the necessary culpable state of mind to support an Eighth Amendment claim. The record reflects that in response to Odom's letters, Nurse Gray reviewed his medical records and saw that he was receiving the care as ordered by a physician. There is no evidence that the course of medical treatment Odom received was inappropriate and in any event, Nurse Gray was neither licensed nor authorized to direct the course of treatment for inmates. As such, Nurse Gray is entitled to judgment as a matter of law.

**D. State Law Claims**

Odom's complaint lists negligent infliction of emotional distress and intentional infliction of emotional distress as grounds for relief. These claims are based on state law and thus this court has only supplemental jurisdiction over these claims. See 28 U.S.C. § 1367. The general rule is that when, as here, the federal claim drops out before trial, the federal district court should relinquish jurisdiction over the supplemental claim. If, however, an interpretation of state law that knocks out the plaintiff's state claim is obviously correct, the federal judge should put the plaintiff out of his misery then and there, rather than burdening the state courts with a frivolous case. *Van Harken v. City of Chicago*, 103 F.3d 1346, 1354 (7th Cir. 1997). Judicial economy, convenience, fairness and comity all weigh in favor of resolving these state law claims in this action. *Taflinger v. U.S. Swimming, Inc.*, 435 Fed. Appx. 559, 562 (7th Cir. 2011) (*citing Carnegie–Mellon University v. Cohill*, 484 U.S. 343 (1988). In addition, substantial resources have been committed (through discovery) to deciding these issues and there is no doubt about how these claims should be decided. *Id.* at 562 (*citing Dargis v. Sheahan*, 526 F.3d 981, 990–91 (7th Cir. 2008); *Miller Aviation v. Milwaukee Cnty. Bd. of Supervisors*, 273 F.3d 722, 731 (7th Cir. 2001); *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994)).

The defendants argue that they are entitled to summary judgment because Odom failed to identify the actions or inactions which were negligent and the type of emotional harm he suffered as a result. Nor has he provided any evidence in support of these claims. "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996), *cert. denied*, 519 U.S. 1115 (1997). That is the case with Odom's state law claims. There is no evidence to support a claim of negligent infliction of emotional distress or intentional infliction of emotional distress. In addition, Odom abandoned these state law claims by failing to respond to the defendants' motion for summary judgment on these issues. *See Palmer v. Marion County*, 327 F.3d 588, 597-598 (7th Cir. 2003) (stating "because Palmer failed to delineate his negligence claim in his district court brief in opposition to summary judgment or in his brief to this Court, his negligence claim is deemed abandoned."); *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996). Accordingly, the state law claims have been abandoned and the defendants are entitled to summary judgment on the state law claims.

## **Conclusion**

It has been explained that "summary judgment serves as the ultimate screen to weed out truly insubstantial lawsuits prior to trial." *Crawford-El v. Britton,* 118 S. Ct. 1584, 1598 (1998). This is a vital role in the management of court dockets, in the delivery of justice to individual litigants, and in meeting society=s expectations that a system of justice operate effectively. Indeed, "it is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases summary judgment is appropriate. *Mason v. Continental Illinois Nat'l Bank,* 704 F.2d 361, 367 (7th Cir. 1983). Odom has not

identified a genuine issue of material fact as to his claims against Dr. Talens and Nurse Gray and these defendants are entitled to judgment as a matter of law. Nurse Flener (like Dr. Talens and Nurse Gray) is also entitled to summary judgment on Odom's state law claims. No partial final judgment shall issue at this time as to the claims resolved in this Entry.

The motion for summary judgment is denied as to the Eighth Amendment claims against Nurse Flener. Accordingly, the Eighth Amendment claims of deliberate indifference and excessive force shall proceed to trial against Nurse Flener. These claims are based on the allegation that Nurse Flener twisted Odom's fractured finger in anger on March 15, 2011. A pre-trial scheduling order will be issued in the near future.

**IT IS SO ORDERED.**

Date: November 20, 2014

*[signature: Jane Magnus-Stinson]*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

GLENN D. ODOM, II
219489
K.S.P
7-B #8
266 Water Street
Eddyville, KY 42039

All Electronically Registered Counsel